IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KENNETH D. MARTIN                                                         PLAINTIFF
V.                                         NO. 14-3030
CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kenneth D. Martin, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed his current application for SSI on April 30, 2012, alleging an inability to work since April 30, 2009, due to asthma, bipolar, and suicidal tendencies. (Tr. 135-138, 157, 162). For SSI purposes, the relevant time period begins the date the application is filed. Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. § 416.203(b). Accordingly, the relevant time period in this case is from April 30, 2012, to January 24, 2014, the date of the ALJ's decision. An administrative hearing was held on May 7, 2013, at which Plaintiff appeared with counsel, and he and his wife testified. (Tr. 29-79).

By written decision dated January 24, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – asthma; major depressive disorder/depressive disorder, not otherwise specified (NOS); and

1

personality disorder, NOS, with cluster B traits. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant must avoid even moderate exposure to fumes, odors, dusts, gasses[sic], poor ventilation and the claimant must avoid concentrated exposure to hazards including no driving as a part of work. The claimant is further able to perform work where interpersonal contact with coworkers and supervisors is incidental to the work performed, there is no contact with the general public, the complexity of tasks is learned and performed by rote, with few variables and little use of judgment, and the supervision required is simple, direct, and concrete.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was unable to perform any past relevant work, but there were other jobs Plaintiff would be able to perform, such as poultry production worker – deboner and production line assembler (light work); and small production machine operator and small product assembler (sedentary work). (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 26, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). The court "'will disturb the ALJ's decision only if it falls outside the available zone of choice.'" Papesh v. Colvin, No. 14-2230, 2015 WL 3396586 at *4 (8th Cir. May 27, 2015)(quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). An ALJ's decision is not outside the zone of choice simply because the court might have reached a different conclusion had it been the initial finder of fact. Papesh, 2015 WL 3396586 at *4 (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8tyh Cir. 2008).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe

3

physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following issues in this matter: 1)  The ALJ erred in his RFC determination by failing to properly consider Plaintiff's severe mental impairments; and 2) The ALJ erred in failing to find that Plaintiff's impairment does not meet or at least equal Listing 12.04. (Doc. 11).

#### A.    RFC Determination:

Plaintiff argues that evidence of symptom-free periods do not compel a finding that disability based on a mental disorder has gone into some sort of remission, and that the ALJ resorted to oversimplification when using Plaintiff's failure to take all of his medications to reinforce his conclusions. Plaintiff also argues that the ALJ's reasons for dismissing his GAF scores of "50 or below" are not persuasive.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting

4

from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

The record reflects that on May 10, 2012, Plaintiff was admitted to Baxter Regional Medical Center with complaints of suicidal ideations. (Tr. 428). Upon admission, Plaintiff was intoxicated and had fractured his hand after punching a wall. (Tr. 351, 429). On May 11, 2012, Plaintiff reported that he drank alcohol weekly in excess. (Tr. 352). At that time, Plaintiff was diagnosed as follows:

| | |
|---|---|
| Axis I: | Depressive d/o NOS, provisional, R/O MDD |
| | Alcohol Dependence |
| Axis II: | Deferred |
| Axis III: | Asthma; GERD; HBP |
| Axis IV: | Problems with primary support |
| Axis V: | GAF – 50 |

(Tr. 353). Plaintiff agreed to limit his alcohol consumption. (Tr. 353).

In a report dated May 21, 2012, Adam Brazas, Ph.D., Psychologist, of Health Resources of Arkansas (HRA), reported that although Plaintiff attempted suicide 14 other

5

times, he never went to the hospital, but slept it off. (Tr. 356). His attempts were either by overdosing or cutting, and he did not cut deep enough to bleed to death. (Tr. 359). Plaintiff reported having two consecutive months without salient depression. (Tr. 360). Dr. Brazas diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Major Depressive D/O, recurrent, mild to moderate presently on meds |
| Axis II: | R/O Borderline Personality D/O |
| Axis III: | Broken right hand from punching wall |
| Axis IV: | Problems with primary support, economic problems, problems related to legal system/crime |
| Axis V: | Current – 50 |

(Tr. 360).

On May 23, 2012, Dr. David L. Hicks, a non-examining physician, completed a Physical RFC Assessment, finding Plaintiff could perform light work, but should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 372). He further stated that Plaintiff's allegations concerning his impairments, symptoms, and the ability to work were not substantiated by the total evidence of record, and were not fully credible. (Tr. 373).

A mental status and evaluation of adaptive functioning was performed on June 19, 2012, by Nancy A. Bunting, Ph.D. (Tr. 378). She noted that although Plaintiff stated he was "bipolar," he said that he had problems with depression, and that this had interfered with his working because "I just want to kill myself when I get upset." (Tr. 378). At that time, Plaintiff stated that with his medication his sleep was better, and that he got out of the house two times a week. (Tr. 378). Plaintiff told Dr. Bunting that he took Trazodone, Lithium, and Zoloft regularly, had no problems with them, and that they helped. (Tr. 379). Plaintiff told Dr. Bunting of his previous criminal convictions and imprisonments, including a seven year imprisonment for statutory rape, and that his last prison time was in 2011 for failure to

6

register as a sex offender. (Tr. 379).  Plaintiff told Dr. Bunting that his last drink was five beers three weeks prior, and that he drank two times a year. (Tr. 380). Dr. Bunting diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Depressive disorder NOS |
| Axis II: | Personality disorder NOS – cluster B traits |
| Axis III: | Unremarkable |
| Axis IV: | Moderate (with support from girlfriend) |
| Axis V: | GAF – 55-65 |

(Tr. 381).  Dr. Bunting further reported that Plaintiff could do all his self-care skills, smoked a half of a pack of cigarettes daily, and did regular chores like washing dishes, laundry, sweeping, vacuuming, cooking, and cleaning. (Tr. 382). She found that he communicated and interacted in a socially adequate manner; communicated in an intelligible and effective manner; had the ability to cope with the typical mental/cognitive demands of basic work-like tasks; had some ability to deal with co-workers and supervisors by his report; and had some ability to deal with the public based on his behavior in the interview. (Tr. 382).  Dr. Bunting found Plaintiff had the ability to attend and sustain his concentration on basic tasks; had some ability to sustain persistence in completing tasks for at least short periods of time; was able to persist during the interview; and had the ability to complete work-like tasks within an acceptable time frame. (Tr. 382-383).  Dr. Bunting concluded that Plaintiff's symptom allegations were not congruent with the results of the interview. (Tr. 383).

On July 2, 2012, non-examining consultant, Kevin Santulli, Ph.D., completed a Psychiatric Review Technique Report, wherein he concluded Plaintiff suffered from Depressive Disorder, NOS, Personality Disorder, with Cluster B traits, and ETOH dependency. (Tr. 395-400).  On that same date, Dr. Santulli completed a Mental RFC Assessment, wherein he reported that the objective findings were not consistent with any

7

marked impairments in adaptive functioning due to a mental impairment, and that Plaintiff was capable of unskilled work. (Tr. 408).

On July 2, 2012, Plaintiff was seen at Mountain Home Christian Clinic, and it was reported that Plaintiff had done much better with his medications. (Tr. 411).

On August 15, 2012, Plaintiff presented to Baxter Regional Medical Center, stating that he was sharpening a knife and got into an argument with his significant other and cut himself on his right leg. (Tr. 417). He stated that he was just seeing if the knife was sharp. It was reported that he was intoxicated upon presentation. (Tr. 421).

On August 16, 2012, Plaintiff was seen by Katherine Darling, APN, at HRA. (Tr. 631). Ms. Darling reported that Plaintiff "exhibits volatility of moods and extremes of behavior." (Tr. 631). She diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Major Depressive Disorder, Recurrent Moderate |
| Axis II: | Diagnosis or condition deferred on Axis II |
| Axis IV: | Problems with primary support group, economic problems, problem related to interaction with the legal system/crime |
| Axis V: | GAF on Admission – 50<br>Current GAF – 41 |

(Tr. 632-633).

On September 8, 2012, Plaintiff presented to the Baxter Regional Medical Center because he was having some purulent drainage from the self-inflicted leg wound. He also complained of congestion and cough, and it was noted that he was a smoker. (Tr. 468). The impression was wound infection of the right leg from a self-inflicted cut with a knife, and acute bronchitis. (Tr. 469).

On September 19, 2012, Ms. Darling saw Plaintiff for medication management and reported that Plaintiff had "vastly improved his psychosis and cutting behaviors." (Tr. 634). His moods were more stable with the Depakote addition, but he continued with some milder

8

mood swings. (Tr. 634). His depression was reported as "relieving" and his mood was reported as "good." (Tr. 634-635). Plaintiff was advised to follow up for lung symptoms and lose 30 pounds, and labs were ordered for lipids. (Tr. 637). His GAF Score was listed as 49. (Tr. 637).

On October 17, 2012, Sheri L. Simon, Ph.D., reported that she had reviewed all of the evidence in the file and the mental assessment of July 2, 2012 was affirmed. (Tr. 610). On October 18, 2012, Dr. Lucy Sauer reported that she had reviewed all of the information in the file and affirmed the decision of May 23, 2012 (Physical RFC Assessment). (Tr. 615).

Between January of 2013 and May of 2013, Plaintiff was seen by registered nurse Lauri Patterson, of HRA. (Tr. 640, 645, 647, 716, 717). Her January report indicated that Plaintiff was "doing pretty well" although she smelled an old, stale odor of alcohol. (Tr. 640). Plaintiff reported that he drank a six pack a couple of times a week and that he had been forgetting to take his medication at times. (Tr. 640). At that time, Plaintiff reported that he thought about cutting at times, but had not done so since he went to the emergency room a few months prior. (Tr. 640). When he saw Ms. Patterson in February of 2013, he denied any problems with his medications, smelled of alcohol, and admitted he had a beer before coming there. (Tr. 645). In March of 2013, Plaintiff denied any major problems with mood or symptoms, and said he would forget to take his evening dose of Depakote ER about 50% of the time. (Tr. 647). He also told Ms. Patterson that he only took Trazodone occasionally. (Tr. 647). In May of 2013, Plaintiff denied side effects or problems with his mood, denied suicidal ideation and denied cutting. (Tr. 717).

Plaintiff also saw Ms. Darling during the same period of time that he saw Ms. Patterson. In January of 2013, Ms. Darling reported that Plaintiff had made progress in his

treatment for schizoaffective disorder, and that Plaintiff reported continued thoughts of cutting, but reported it was not severe most of the time. (Tr. 641). His moods were improving but he continued to feel some depressed mood. (Tr. 641). Plaintiff's GAF score was then reported as 50. (Tr. 644). Also in January of 2013, Plaintiff was seen by Faramarz Shahinpouri, L.M.S.W., of HRA, who asked Plaintiff to start exercising ½-1 hour a day, to cut smoking any way he could, and to start having a social life. (Tr. 646). He reported that Plaintiff smelled of alcohol, and had no reduction of his depression after the recent adjustment to his medication. (Tr. 646). Plaintiff reported that he recently started thinking about cutting again, and his GAF was reported as 50. (Tr. 646).

In April of 2013, Plaintiff reported to Ms. Darling that his depression was at 3-4, and he was willing to add another antidepressant since he was at a maximum dose of Zoloft. (Tr. 712). He reported that he had some suicidal ideation but it passed quickly, and he had not injured himself since his last visit. (Tr. 712). Ms. Darling added Wellbutrin for depression, and listed his GAF at 47. (Tr. 714-715).

At the hearing held before the ALJ, Plaintiff testified that when he got really depressed, he drank alcohol, and that it was better now that he was on his medications. (Tr. 46). He then contradicted himself by stating that he did not have mood swings since he got on his pills, but with his medications, he had mood swings two or three times a day. (Tr. 46). He also testified that he rarely had problems with his back, but had problems with his knees and legs. (Tr. 32). He testified that sometimes he forgot to take his medications, and that he had not been able to increase his activities, whether mental, social or physical. (Tr. 59-60). Plaintiff's wife testified that with the new medications and the doctor adjusting them several times, Plaintiff's anger was a lot better. (Tr. 69).

In his decision, the ALJ discussed Plaintiff's assertions, and concluded that he presented little evidence of treatment for physical impairments except for the fact that he testified that the medications he took for his mental impairments caused him to be lethargic. (Tr. 17). The ALJ noted, and the record supports, that Plaintiff failed to report such side effects to his prescribing providers, and the ALJ pointed to the instances in the record where Plaintiff denied experiencing any unwanted side effects from his medications. (Tr. 17). The ALJ also discussed the fact that the record indicated that Plaintiff failed to follow the recommendations of his treating physicians, such as restarting his prescribed medications and taking them on an inconsistent basis; failing to establish with a primary care physician and obtaining regular medical care; and failing to make an effort to interact socially, exercise, cease smoking, and losing weight. (Tr. 17). Although Plaintiff complained of being unable to afford medical care, he previously received care from the Mountain Home Christian Clinic. (Tr. 17). In addition, during the relevant time period, Plaintiff was able to afford to smoke cigarettes and drink alcohol.

The ALJ's decision indicates that he considered the medical records, the effectiveness of, and non-compliance with, Plaintiff's recommended course of treatment, the opinions of the treatment providers as well as those of the non-examining consultants, and Plaintiff's own complaints. In making his determination, the ALJ concluded that the objective medical evidence of record did not support the severity of limitations alleged by Plaintiff, and considered the fact that the record contained evidence that Plaintiff appeared to be able to achieve significant benefit from prescribed medications. (Tr. 19). The ALJ afforded substantial weight to the opinions of Plaintiff's treating physicians, finding they were consistent with each other and with the record as a whole, except for the diagnostic

11

impression of schizoaffective disorder by Ms. Darling. (Tr. 20). The ALJ also afforded substantial weight to the opinions of the examining and non-examining agency consultants, finding them consistent with the opinions of Plaintiff's treating physicians and the record as a whole. (Tr. 20-21). The ALJ also considered the statements made by Plaintiff's wife and mother-in-law, and afforded them less weight than the opinions of medical sources. (Tr. 21).

With respect to Plaintiff's GAF scores, the ALJ indicated that he thoroughly considered said scores, but afforded them "little or no weight as the undersigned finds that they are not a reliable measure of functional ability." (Tr. 21). He concluded that the GAF scores revealed only a picture in time and were very subjective with the examiner. He therefore did not afford the scores the same weight as the remainder of the findings and opinions of evidence. (Tr. 21).

The Eighth Circuit has held that a "GAF score is not essential to the accuracy of an RFC determination, only that it may be of considerable help in formulating RFC." Earnheart v. Astrue 484 F.Appx. 73, 75 (8th Cir. 2012). Although a lengthy history of low GAF scores indicates the existence of serious limitations, Pates-Fires v. Astrue, 564 F.3d 935, 944 (8th Cir. 2009), the Social Security Administration has explained that "the GAF scale … does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed.Reg. 50764-765. In general, an ALJ is not required to address Plaintiff's GAF scores. See Jones v. Astrue, 619 F.3d 963, 973 (8th Cir. 2010); see also Howard v. Com'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)(stating the failure to reference a GAF score, standing alone, does not make the RFC inaccurate). "[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones, 619 F.3d at 974.

Plaintiff was assigned GAF scores of 50 by Dr. Brazas and less than 50 by the non-acceptable medical source, Katherine Darling, APN. Dr. Bunting assigned a GAF score of 55-65. The ALJ did not disregard the GAF scores, but clearly considered and addressed them and gave them less weight than the medical providers' opinions, which he was allowed to do.

Plaintiff refers to the case of Wright v. Astrue, Civil No. 3:11-cv-03047, 2012 WL 4955205 (W.D. Ark. October 16, 2012), in support of his position. However, the Court finds the facts in this case are distinguishable from those in Wright, and that the Eighth Circuit's more recent pronouncements support the ALJ's conclusions.

With respect to Plaintiff's arguments regarding his failure to take his medication as directed, the Court finds it significant that Plaintiff's non-compliance was not the major reason for the ALJ's findings relating to his RFC. The ALJ discussed Plaintiff's daily activities in addition to the medical records, opinions of the physicians, and Plaintiff's own complaints. In addition, the ALJ discussed Plaintiff's diminished credibility. (Tr. 20).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the various opinions.

### B.   Failure to Meet Listing 12.04:

Plaintiff argues that he met Listing 12.04A and B, which provides as follows:[1]

> 12.04 – Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

---

[1] The Court is only including those provisions referenced by Plaintiff. (Doc. 11 at p. 14).

13

> **A.** Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>    c. Sleep disturbance; or
>    e. Decreased energy; or
>    g. Difficulty concentrating or thinking; or
>    h. Thoughts of suicide
>
>    AND
>
> **B.** Resulting in at least two of the following:
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

"The claimant has the burden of proving that his impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010), quoting from Sullivan v. Zebley, 493 U.S. 521, 531 (1990). "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.

Plaintiff fails to explain how he meets the criteria set forth above, but appears to argue that he meets or equals the criteria found in paragraph B. In his brief, Defendant suggests that even assuming Plaintiff meets or equals the A criteria for this listing, he has failed to establish that he meets the B criteria for the listing. The Court agrees. The Court finds that the ALJ's findings relating to Plaintiff's level of difficulty in maintaining social functioning (moderate) and in maintaining concentration, persistence, or pace (moderate), and no episodes of decompensation (Tr. 15), are supported by the record as a whole, and

therefore, the criteria in paragraph B have not been met.  These findings are supported by the opinions of Dr. Santulli, Dr. Simon, and Dr. Bunting.

Accordingly, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff failed to meet Listing 12.04.

### C.  Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ considered the relevant factors, and found that Plaintiff's credibility was harmed by evidence that he provided inconsistent information relevant to the issue of disability, and the ALJ pointed to several instances where Plaintiff's statements were inconsistent. (Tr. 20). The ALJ also found Plaintiff's unwillingness to assist in the production of a complete and accurate record to be detrimental to his overall credibility.  (Tr. 20).

The Court finds there is substantial evidence in the record to support the ALJ's credibility analysis.

**D.     Hypothetical Question to VE:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing such jobs as poultry production worker – deboner and production line assembler (light work), and small production machine operator and small product assembler (sedentary work), during the time period in question.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this  8th day of June, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE